Case: 1:21-cv-00220-TMP  Doc #: 1-2  Filed: 01/28/21  1 of 14. PageID #: 8

CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20941784 | D1 CM | 43274548 |

Rule 4 (B) Ohio

Rules of Civil Procedure

FAYZA PANNO
**VS**
CLEVELAND METRO PARKS, ET AL

**PLAINTIFF**

**DEFENDANT**

**SUMMONS**

CLEVELAND METRO PARKS
4101 FULTON PARKWAY
CLEVELAND OH 44144

**You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.**

**You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.**

**Said answer is required to be served on:**



**Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)**

Plaintiff's Attorney

CHARLES A BAKULA
PO BOX 39116

SOLON, OH 41392-0000

**Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.**

**If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.**

**Case has been assigned to Judge:**

SHERRIE MIDAY
**Do not contact judge. Judge's name is given for attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas





| DATE SENT |
|---|
| Dec 22, 2020 |

By_____
**Deputy**

COMPLAINT FILED    12/21/2020

**EXHIBIT**

**A**

CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**December 21, 2020 14:24**

By: CHARLES A. BAKULA 0058631

Confirmation Nbr. 2140715

FAYZA PANNO                                    CV 20 941784

    vs.

CLEVELAND METRO PARKS, ET AL        **Judge:**  SHERRIE MIDAY

**Pages Filed:**  12

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

FAYZA PANNO                                          CASE NO:
3151 Nellie Ln.
Twinsburg, Ohio 44087
                                                    JUDGE:

V.

CLEVELAND METRO PARKS                               COMPLAINT
4101 Fulton Parkway                                 Jury Demand Endorsed
Cleveland, Ohio 44144

and

DAVID FENSKE
10700 Sharon Dr.
Parma, Ohio 44130

and

DONALD SYLVIS
11815 Chippewa Rd.
Strongsville. Ohio 44141

and

KATHERINE DOLAN
10452 Angelina Dr.
North Royalton, Ohio 44133

and

FRATERNAL ORDER OF POLICE
OHIO LABOR COUNCIL, INC.
222 East Town Street
Columbus, Ohio 43215

Plaintiff, Fayza Panno, ("Panno"), for her Complaint against Defendants, Cleveland Metro Parks, ("CM"), Fraternal Order of Police, Ohio Labor Council, Inc. ("FOP"), David Fenske, ("Fenske"), Donald Sylvis, ("Sylvis") and Katherine Dolan, ("Dolan") states as follows:

1.      At all times relevant hereto, Panno is a female individual of Latin descent, residing in the City of Twinsburg, County of Summit, and is a former Patrol Officer for the Cleveland Metroparks System.

2.      At all times relevant hereto, Cleveland Metroparks under information and belief is a quasi-governmental agency created by statute to manage and maintain the various nature preserves in and around the greater Cleveland Metropolitan Area.

3.      FOP is a labor organization created and existing to represent police officers within its bargaining unit.

4.      David Fenske is an individual residing in Cuyahoga County and is a former Twinsburg Police Officer and former paramour of Panno.

5.      Donald Sylvis is an individual, believed to be residing in Cuyahoga County and is the former supervising Officer of Panno.

6.      Katherine Dolan is an individual residing, under information belief, in Cuyahoga County and is currently the Chief Ranger of the Cleveland Metroparks.

7.      At all relevant times Dolan and Sylvis are full-time employees of the Cleveland Metroparks working peace officers. In that capacity, they were responsible for the implementation of all laws, policies, regulations and procedures of the Cleveland Metroparks, the State of Ohio and the United States.

8.      Dolan and Sylvis are sued in their official and individual capacities.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction because Plaintiff seeks money damages and other relief within the jurisdictional limits of this Court.

10.     Venue is proper pursuant to Ohio R. Civ. Pro. 3(B)(3) because Defendants' actions which gave rise to this action took place in Cuyahoga, Ohio.

## FACTS and ALLEGATIONS

11      This action arises from the unfair, deceptive, fraudulent, improper, illegal and unethical actions taken by the Defendants against Panno.

12.     Panno and Fenske were engaged in a tumultuous personal relationship that lasted on and off for about a decade.

13.     During that entire timeframe Fenske engaged in abusive and malicious acts directed toward Panno, including, stalking, telephone harassment, invasion of privacy, trespass, and interference with relationships Panno maintained, among other acts.

14.     The personal relationship ended as a result of illegal stalking and menacing for which Fenske was prosecuted in the Stow Municipal Court.

15.     Fenske was a Sergeant on the patrol division for the city of Twinsburg Police Department. While he would be on duty as a police supervisor, he would stalk Panno by turning off the transponder unit of his patrol car and enter her neighborhood and sneak through many neighbors' yards, looking through windows to constantly monitor Panno's whereabouts.

16.     Ultimately, Fenske was caught by Panno's neighbor in October, 2017. The relationship ended permanently after this.

17.     Fenske was forced to resign from the city of Twinsburg a few months after an investigation

of the actions near Panno's home took place.

18.     During the month of February, 2018, Panno approached Fenske's police Lieutenant and supervisor to let them know that she was being harassed. At that time she showed them dozens of texts as proof.

19.     Panno advised Lieutenant Tom Mason that she would only be patient with the harassing texts for a little while longer, but there would be a good chance that knowing the controlling insecure person Fenske is, more than likely she would be forced to file charges with the City of Twinsburg.

20.     Fenske continued to send vile, degrading, and demeaning text messages for almost two months after that. Panno never responded to any of them.

21.     On March 29, 2018, Panno filed Telecommunications Harassment (M-1) charges against Fenske.

22.     At this point Fenske had already been forced to resign from the Twinsburg Police Department.

23.     In June of 2018, Panno took Fenske to court because he would not stop harassing her.

24.     He was originally charged with a misdemeanor of the first degree, telecommunications harassment.

25.     Ultimately, the charges were reduced to a minor misdemeanor, disorderly conduct.

26.     Fenske's attorney requested a trial, even after the charges were dropped to disorderly conduct. In a negotiated resolution Panno agreed to drop the charges.

27.      On June 11, 2018, Magistrate Clarke of Stow Municipal court saw the parties separately and explained that the charges would be dropped without prejudice, and should Fenske harass Panno again within the next year, the charges could be refiled.

28.     Panno made aware individuals at CM, including Sylvis, that she was a victim of stalking and had taken Fenske to court.

28.     In September of 2018, Panno was advised by the Prosecutor that Fenske's attorney was requesting to seal all of his files.

29.     Panno objected because she was concerned that it would not allow her to refile charges and she was certain he would seek revenge it the files were sealed.

30.     As Panno suspected, eight months after Magistrate Clark ordered Fenske to stay away from her, Fenske contacted Panno's employer on January 29th, 2019 and filed a complaint against solely for the purpose of revenge.

31.     Fenske approached Sylvis and asked to be granted "Confidential Informant", status in effort to avoid potential exposure for violating the admonition of Magistrate Clarke in addition to providing false, misleading and damaging information about Panno in an effort to have her terminated.

32.     During the course of their personal relationship, Panno and Fenske would share private information about the actions that took place at their work.

33.     Panno in the past had provided information to Fenske about improper, unethical and illegal acts or actions taken by Sylvis.

34.     This information was shared by Fenske to Sylvis at the time of their discussions about Panno.

35.     This information was also used as the impetus for the investigation into Panno.

36.     Sylvis agreed to grant "Confidential Informant" status to Fenske in furtherance of a civil conspiracy against Panno.

37.     Sylvis, in the past, was threatened by the position that Panno held with the CM, and when

he became her superior officer, used this as an opportunity to eliminate her as a threat due to the knowledge that she possessed and the animus he held toward Panno and other minority officers.

38.     There was a full investigation completed by Sylvis against Panno using whatever information Fenske had provided.

39.     Fenske and Sylvis engaged in a conspiracy against Panno in an effort to (1) enact revenge against her, (2) eliminate her as a threat to Sylvis, as both of them held animus toward Panno.

40.     The complaint Fenske made against Panno was completely redacted in an effort to conceal the actions taken by Fenske and Sylvis.

41.     The sole purpose of making Fenske a confidential informant was to gain information and then to redact that information so that Panno would never see what was said and not be allowed to question it.

42.     Fenske and Sylvis engaged in a civil conspiracy by their malicious actions directed toward Panno, resulting in damages.

43.     Fenske and Sylvis intentionally and deliberately inflicted emotional distress on Panno by violating her rights, and/or by abusing the lawful process by unlawful purpose, and/or by violating Panno's constitutional rights, by falsely claiming Panno had committed illegal acts and/or by conspiring against Panno, and/or by interfering with Panno's civil rights by threats, coercion, and/or intimidation, and/or knew or should have known that emotional distress was the likely result of their conduct.

44.     Fenske and Sylvis' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

45.   The actions of Fenske and Sylvis were the cause of Panno's distress. The emotional distress sustained by Panno was severe and of a nature that no reasonable person could be expected to endure.

46.   As a result of Fenske and Sylvis' extreme and outrageous conduct, Panno was, is, and, with a high degree of likelihood, will continue to be emotionally distressed due to the intentional exclusion.

47.   As a result of Fenske and Sylvis' extreme and outrageous conduct, Panno has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

48.   As a result of the concerted unlawful and malicious conspiracy of Fenske and Sylvis, Panno was deprived of both her liberty without due process of law and her right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985.

49.   On March 22, 2019, Panno was contacted and told that she placed on administrative leave, pending further investigation.

50.   During this time an Officer was present when Sylvis discussed that he had put a GPS tracker on Panno's personal vehicle without a warrant or justification to do such.

51.   Even after the investigation was complete, unfair practices occurred.

52.   Ultimately, after an exhaustive investigation Panno was accused of inappropriately using sick time and leaving after she completed four separate eight-hour training classes, with a travel time of at least half an hour each (after they were completed).

53.   Panno was accused of allegedly stealing 3.75 hours of time, total. All of this information was provided to the hierarchy at CM, including Dolan.

54.     At no point during or after these classes would Panno be required to be in uniform or on duty.

55.     There is ample evidence that this was something done as past practice and current practice, by many other officers, none of which resulted in any form of discipline.

56.     There was disparate treatment of Panno, a minority female officer, and other minority officers that worked at CM.

57.     Officers finish a class after 8 hours and leave without going back to their base for last hour or so.

58.     The union contract that the FOP maintained with the CM required that progressive discipline be imposed prior to any termination.

59.     No progressive discipline was offered, despite being a requirement of the union contract and a demand made by Panno.

60.     The FOP breached its legal obligation by failing to sufficiently and adequately represent one of its members by enforcing the labor agreement between the parties.

61.     On May 14, 2019, Panno was terminated from employment with the CM.

62.     CM terminated Panno despite having full knowledge that there are several officers, including Sylvis, that have committed actual crimes, both misdemeanors and felonies. Those officers were permitted to remain on the force.

63.     As a further act of vengeance, Sylvis attempted to have Panno charged with a crime, but was denied by the Cuyahoga County Prosecutor.

64.     The FOP filed a grievance to request a hearing.

65.     The hearing was held on September 10, 2019.

66.     The FOP union asked for a last chance agreement during the time prior to the hearing.

67.     Metroparks denied the offer and insisted on termination.

68.     On September 9, 2019 the FOP attorney received a call from the Metroparks attorney asking if Panno would resign in lieu of termination prior to the hearing. Panno agreed.

69.     An agreement was reached on September 10, 2019 stating that the status of Panno would be unconditionally converted from "terminated" to "voluntary resignation" and no information other than dates of employment, current position, and salary would be supplied to future employers.

70.     Immediately upon signing the agreement, it was breached by CM.

71.     CM never converted Panno's employment status as required, thereby constituting fraud in both the making of the contract and in its execution.

72.     CM continued to maintain the status of Panno as terminated, in addition to disclosing negative information, well beyond what was permitted, to prospective employers that inquired about Panno.

73.     Panno contacted CM about her allegations and was repeatedly told that there was no negative information disclosed and all aspects of the agreement were followed.

74.     This representation was false and misleading.

75.     During the summer of 2020 Panno discovered evidence that CM had repeatedly breached the agreement entered into in September of 2019.

76.     Upon discovery, Panno contacted the FOP requesting them to assist her in enforcing the agreement, or to assist in obtaining redress for the violation.

77.     FOP refused to assist, thereby joining the civil conspiracy already in motion.

78.     At all times relevant to this Complaint, Sylvis, as police officer was acting under the direction and control of CM.

79.     Acting under color of law and pursuant to official policy or custom, Sylvis and the CM knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis their police officer.

80.     CM had knowledge or, had they diligently exercised that duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Sylvis and CM had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

81.     Sylvis and CM directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of the police officer heretofore described.

82.     As a direct and proximate cause of the negligent and intentional acts of Sylvis and CM, Panno suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of her constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. sec. 1983.

83.     Fenske, Sylvis and the CM intentionally and deliberately inflicted emotional distress on Panno by maliciously prosecuting Panno, or by abusing the lawful process by unlawful purpose, or by violating Panno 's constitutional rights, or by falsely claiming Panno had committed illegal acts or by conspiring against Panno, or by interfering with Panno 's civil rights by threats, coercion, or intimidation, or knew or should have known that emotional distress was the likely result of their conduct.

84.     The conduct of Fenske, Sylvis and CM was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

        WHEREFORE Fayza Panno prays for judgment against Cleveland Metro Parks, ("CM"),

Fraternal Order of police Ohio Labor Council, Inc., ("FOP"), David Fenske, ("Fenske"), Donald Sylvis, ("Sylvis") and Katherine Dolan, ("Dolan") states as follows:

1.      Reinstatement to her former position with full back pay and back benefit payments and restoration of all seniority and benefits

2.      In addition, to damages in an amount to be proven at trial but in excess of $25,000.00, jointly and severally, and an additional amount of punitive damages in an amount in excess of $25,000. 00, jointly and severally,

3.      plus court costs, attorney fees and expenses,

4.      and, such other and further relief as this Honorable Court may deem proper.

Respectfully submitted,

_//CAB//_____
Charles A. Bakula
Ohio Reg. No. 0058631
PO Box 39116
Solon, Ohio 44139
(330) 487-5446
charlesbakula@aim.com
Attorney for Plaintiff

## **JURY DEMAND**

A trial by Jury is demanded as to all issues so triable.


_____*//CAB//*_____
Charles A. Bakula